IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYRUS YERBY, )
)
Plaintiff, )
)
v. ) Civil Action No. 3:19-CV-394-HEH
)
CITY OF RICHMOND, VIRGINIA, )
)
Defendant. )

## MEMORANDUM OPINION
(Granting Defendant's Motion for Summary Judgment)

This matter is before the Court on the City of Richmond's ("Defendant," or the "City") Motion for Summary Judgment (the "Motion"), filed on January 13, 2020 (ECF No. 28). Plaintiff Tyrus Yerby ("Plaintiff") filed his Amended Complaint on October 22, 2019, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, in a single count (ECF No. 22).[1] In his Amended Complaint, Plaintiff alleges that the City failed to engage in the interactive process, failed to provide him with reasonable accommodations, and wrongfully terminated him. (Am. Compl. at 4.)

Plaintiff has since withdrawn his wrongful termination claim, and now combines the remaining claims into a single allegation: that the City failed to engage in the interactive process, which caused a failure to identify and provide Plaintiff with reasonable accommodations. Counsel for both parties represented that this is Plaintiff's only remaining claim and the subject of Defendant's Motion. Both parties fully briefed

---

[1] Plaintiff initially filed suit in this Court on May 24, 2019 (ECF No. 1).

the issue, and the Court heard oral argument on the Motion on February 20, 2020. For the reasons that follow, Defendant's Motion will be granted.[2]

The parties have submitted their respective statements of undisputed material facts pursuant to the Court's Local Rules, and the Court has reviewed the statements, including the references to supporting evidence. As required, the Court resolves all genuine disputes of material fact in favor of the non-moving party and disregards those factual assertions that are immaterial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). Applying this standard, this Court concludes that the following narrative represents the facts for purposes of resolving Defendant's Motion.

Plaintiff was diagnosed with ADHD and anxiety disorder sometime around 2013 or 2014, before he started working for the City.[3] (Yerby Dep. 9:3–12:10, ECF No. 30-1.) Plaintiff then began taking various medications for his anxiety and ADHD. (*Id.* at 30:17–31:11.) On June 12, 2017, Plaintiff started working for the City as an Administrative Project Analyst as a probationary employee. (Def.'s Mem. Supp. Mot. Summ. J. at 4, ECF No. 29 [hereinafter Def.'s Mem.]; Def.'s Mem. Ex. B, ECF No. 29-2; Pl.'s Br. Opp'n at 5–6, ECF No. 30 [hereinafter Pl.'s Br.].) Even though he had been diagnosed with ADHD and anxiety disorder several years earlier, Plaintiff made no mention of his

---

[2] Accordingly, Defendant's Motion to Exclude or Limit the Expert Testimony of Dr. Chandra Amara (ECF No. 32) and Motion *in Limine* (ECF No. 43), and Plaintiff's Motion *in Limine* to Impose Sanctions on Defendant for Failure to Comply with Fed. R. Civ. P. 30(b)(6) (ECF No. 37) and Motion *in Limine* to Deem Rule 30(b)(6) Leybold Testimony Admissible (ECF No. 39), will be denied as moot.

[3] For purposes of summary judgment, Defendant does not contest that Plaintiff had disabilities within the meaning of the ADA.

disabilities, nor requested an accommodation for his disabilities, during the hiring and recruitment process. (Yerby Dep. 37:25–38:11, ECF No. 29-3; Def.'s Mem. at 4; Pl.'s Br. at 5.)

During the fall of 2017, Plaintiff suffered a panic attack at his desk while at work. (Yerby Dep. 38:22–23, 40:10–18, ECF No. 29-3.) Earlier that morning, he felt groggy and almost stayed home from work, but decided to go in anyway. (*Id.* at 38:25–39:2.) He thought his panic attack was "increas[ing]," so he took his medication. (*Id.* at 39:3–7.) Around that same time, the City had terminated a temporary employee for drinking at the office. (*Id.* at 39:10–14; Def.'s Mem. at 4; Pl.'s Br. at 5.) Concerned that he would also be perceived as drinking on the job because his medication made him "jittery" and his eyes were "really red" from not sleeping the night before, Plaintiff went to speak with his supervisor, Dorothy Dayne ("Dayne"). (Yerby Dep. at 39:7–40:3, 42:2–8, 48:22–49:1, ECF No. 29-3.) In his deposition, Plaintiff testified:

> So I walked in her office. I said, Ms. Dayne, can I speak to you for a moment. And I told her, I said, I just want you to know I'm a little shaky. I took my medicine. I said, I have anxiety. I said, I took a Xanax. I said, I also took my Adderall. So right now I'm a little shaky. If you look at my hands, I'm a little shaky. I said, but I don't want you to think I'm drinking or doing anything else. So I just want you to know that. Her and I talked. At that time she told me she understood. Somebody in her family had had ADHD, and that her daughter suffered from anxiety. So she understood where I was coming from. So she told me if I needed to get myself together, go ahead and do it and just come back. So we had that discussion.

(*Id.* at 39:20–40:9.)

At no point during that conversation did Plaintiff request an accommodation for his ADHD or anxiety disorder. (*Id.* at 119:7–9.) Furthermore, at no other time during his

3

tenure with the City did he ask for an accommodation for these disabilities. (*Id.* at 119:10–15.) Plaintiff also testified that he did not recall nor was he aware of any other conversations with Dayne—or any other City supervisor or manager—concerning these disabilities. (*Id.* at 120:15–121:20.) However, around that same time, in November 2017, Plaintiff experienced pain in his foot. (*Id.* at 96:14–97:8.) Because the City's dress code prohibited employees from wearing sneakers, Plaintiff requested an accommodation to wear sneakers at work and brought in a doctor's note to support his request, which was granted. (*Id.* at 97:1–98:23.)

Several months later, supervisors at the City determined that Plaintiff was not meeting expectations. (Def.'s Mem. at 6; Pl.'s Br. at 5.) Because terminating Plaintiff after the probationary period of one year could present more administrative difficulties, the City terminated Plaintiff on June 11, 2018. (Def.'s Mem. at 6–7; Def.'s Mem. Ex. F, ECF No. 29-6; Pl's Br. at 5, 17.)

Following his termination with the City, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 27, 2018. (Am. Compl. ¶ 7; Notice, ECF No. 46.) After receiving a Right to Sue Notice on May 1, 2019, Plaintiff filed the present action in this Court against Defendant. (Am. Compl. ¶ 7.) Plaintiff claims that Defendant failed to engage in the interactive process which caused a failure to identify and provide him with reasonable accommodations in violation of the ADA. In its Motion, Defendant asserts that Plaintiff never made a request for an accommodation, and accordingly, his ADA claim must fail.

The standard of review for summary judgment motions is well settled in the Fourth Circuit. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *Id.* at 255.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. Indeed, summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

To defeat an otherwise properly supported motion for summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, the mere existence of a scintilla of evidence, or the appearance of some metaphysical doubt concerning a material fact." *Lewis v. City of*

5

*Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). The court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

In analyzing a motion for summary judgment, it is important to keep in mind that a material fact is one that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. *Anderson*, 477 U.S. at 248.

"[I]n order for a plaintiff to establish a prima facie case against his employer for failure to accommodate under the ADA, the plaintiff must show: '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations.'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (quoting *Rhoads v. Fed. Deposit Ins.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)). "Implicit in the fourth element is the ADA requirement that the employer and employee engage in

an interactive process to identify a reasonable accommodation." *Haneke v. Mid-Atlantic Capital Mgmt.*, 131 F. App'x 399, 400 (4th Cir. 2005) (unpublished).

"The duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability." *Wilson*, 717 F.3d at 346–47. The Fourth Circuit relied on similar holdings from the Third, Fifth, Seventh, and Tenth Circuits in making this determination. *See id.* (citing *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011) ("Before an employer's duty to provide reasonable accommodations—or even to participate in the 'interactive process'—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice."); *Dargis v. Sheahan*, 526 F.3d 981, 988 (7th Cir. 2008) ("When the disabled worker has communicated his disability to his employer and asked for an accommodation so that he can continue working, the employer has the burden of exploring with the worker the possibility of a reasonable accommodation."); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999) [hereinafter *Phoenixville Sch. Dist.*] ("What matters under the ADA is whether the employee or a representative for the employee provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation."); *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996) ("It is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one.")).

Therefore, it is axiomatic that for an employer to refuse an accommodation, a request for one must be made. *See Parkinson v. Anne Arundel Med. Ctr.*, 79 F. App'x 602, 604 (4th Cir. 2003) (unpublished). "What information the employee's initial notice must include depends on what the employer knows. . . . Employers cannot assume employees are disabled and need accommodations." *Phoenixville Sch. Dist.*, 184 F.3d at 313. "[W]hile the notice does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,' the notice nonetheless must make clear that the employee wants assistance for his or her disability." *Id.*; *see also Parkinson*, 79 F. App'x at 604–05 (quoting *Phoenixville Sch. Dist.*, 184 F.3d at 313); *EEOC v. Womble Carlyle Sandridge & Rice, LLP*, 616 F. App'x 588, 594 n.2 (4th Cir. 2015) (unpublished) ("We reject the EEOC's argument that [the employer] violated the ADA by failing to engage in an interactive process to identify a reasonable accommodation for [the employee]. . . . [T]here is no evidence in the record indicating that [the employee] ever requested an accommodation. In fact, she testified that she did not tell anyone that she needed an accommodation before her disability leave.").

In this case, both parties rely on the conversation that Plaintiff had with Dayne in the fall of 2017. Conspicuously absent from that conversation is any request for an accommodation. Moreover, during his deposition, Plaintiff was asked: "During that conversation you did not ask Ms. Dayne to help you get a[n] accommodation from the City?" to which Plaintiff responded, "No." (Yerby Dep. at 119:7–9, ECF No. 29-3.) Furthermore, he was asked: "At no other time did you ever ask her or anybody else in the city to provide you with an accommodation," to which Plaintiff responded, "No." (*Id.* at

8

119:10–15.) He also said that he never brought in a doctor's note nor asked for help to work through his conditions. (*See id.* at 119:16–21.) Finally, despite being diagnosed with his disabilities several years before starting his job with the City, at no point during the hiring or recruitment process did Plaintiff ever convey to the City his disabilities or the need for an accommodation. (*See id.* at 37:25–38:11.)

In Plaintiff's statement of the facts in his Brief in Opposition, he never asserts that he made a request for an accommodation, nor cites to any evidence that a request for one was made. In fact, he continually argues that he was never made aware of his performance issues, including the concerns regarding his lack of focus and concentration, and that if he had known, then he would have made a request. Furthermore, Plaintiff offers his own theory of what the law should require: that instead of having to prove that the City refused an accommodation, he must only show that "the City refused to engage in good faith in the interactive process, thereby resulting in its failure to accommodate him." (Pl's Br. at 27.) Even though he never asked for an accommodation, Plaintiff asserts that his conversation with Dayne about his disabilities was sufficient to trigger the interactive process, and that the City failed to engage in that process in good faith.

Despite Plaintiff's *post-hoc* rationalizations, the law requires the employee to convey "to his employer his disability *and* his desire for an accommodation for that disability," in order to trigger an interactive process. *See Wilson*, 717 F.3d at 346–47 (emphasis added). Plaintiff admits that no request for an accommodation was made. Thus, merely informing Dayne of his disabilities was not sufficient to trigger an

9

interactive process. Accordingly, his ADA claim must fail. *See Womble Carlyle Sandridge & Rice, LLP*, 616 F. App'x at 594 n.2.

This rationale is further demonstrated by the fact that Plaintiff approached Dayne because he was concerned about the effects of his medicine making him "jittery," he did not get much sleep the night before so his eyes were red, and another temporary employee had been terminated for drinking, so he did not want Dayne to think the same about him. Thus, his motivation to talk to her derived from his concern that his medication makes him jittery, not about his lack of focus or concentration. Furthermore, Plaintiff offers no evidence that he ever conveyed to Dayne—or any other City manager or supervisor—that his disabilities and medication affect his ability to focus and concentrate. This Court cannot impose upon an employer the requirement that it must assume that an employee is suffering from specific symptoms of a disability, that those symptoms are affecting the employee's duties at work, and that an accommodation for those symptoms and effects needs to be provided. *See Huppenbauer v. May Dep't Stores Co.*, No. 95-1032, 1996 U.S. App. LEXIS 27480, at *17–19 (4th Cir. Oct. 23, 1996) (unpublished) ("Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA." (quoting *Morisky v. Broward Cty.*, 80 F.3d 445, 448 (11th Cir. 1996))).

Furthermore, Plaintiff had previously requested an accommodation around that same time with respect to a different issue—wearing sneakers at work due to foot pain. Thus, Plaintiff knew how to make a request for an accommodation, and was capable of making one, but failed to do so here. *See Parkinson*, 79 F. App'x at 604–05.

Finally, Plaintiff argues that Dayne failed to follow the City's ADA policy, which allegedly would have required Dayne to report to the City's Department of Human Resources that Plaintiff had discussed his disabilities with her. However, as Defendant points out, the City's policies and procedures do not establish, nor supplant, the standards set forth under the ADA. *See, e.g., Ray v. Amelia Cty. Sheriff's Office*, 302 F. App'x 209, 213 (4th Cir. 2008) (unpublished) ("Because [the plaintiff's] grievance did not concern an alleged violation of the [Age Discrimination in Employment Act] or other employment discrimination laws, only an alleged violation of local administrative policies and procedures, she was not engaged in a protected activity, and therefore did not state a retaliation claim in her complaint to the EEOC.").

Plaintiff offers a novel theory of what he thinks the law should be with respect to the ADA. However, this Court is obligated to make its determinations based upon what the law actually prescribes. The Fourth Circuit—and numerous other circuits—require that the employee make a request for an accommodation to trigger the interactive process. Plaintiff admits that no such request was ever made. Accordingly, it is indisputable that Plaintiff cannot establish a prima facie case for failure to accommodate under the ADA. Therefore, Defendant's Motion for Summary Judgment will be granted.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: March 4, 2020
Richmond, VA

11